IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANGELA MARIE KING, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 25-1017-KHV |
| | ) | |
| KOCH AG & ENERGY | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

On January 29, 2025, Angela Marie King filed suit against her former employer, Koch AG & Energy Solutions, LLC ("Koch"), alleging that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 et seq., defendant subjected her to a hostile work environment (Count I), disparate treatment on the basis of sex (Count II) and retaliation (Count III). See Amended Complaint (Doc. #12) filed May 1, 2025. Plaintiff also alleges that defendant violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) (Count IV). Id. This matter is before the Court on Koch AG & Energy Solutions, LLC's Motion To Dismiss Plaintiff's Amended Complaint (Doc. #14) filed May 15, 2025. For reasons stated below, the Court overrules defendant's motion.

**Legal Standards**

Defendant asks the Court to dismiss Counts I, III and IV of plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion

to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiff bears the burden of framing her claims with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's amended complaint alleges as follows:

Koch produces, markets and distributes fertilizers, methanol, natural gas and crop

-2-

performance technologies.  In December of 2018, Koch hired plaintiff—who is female—as a Finance Leader for its plant in Fort Dodge, Iowa.  From 2019 through 2022, Koch gave plaintiff positive feedback about her work performance.  Koch supervisory staff and senior leadership specifically distinguished plaintiff for the value that she brought to company projects.

Between July of 2020 and August of 2022, plaintiff applied to or otherwise expressed interest in 11 separate vacant positions within Koch.  Koch awarded ten of the 11 positions to male applicants, and at least half of the successful male applicants were less qualified than plaintiff.  By June of 2022, plaintiff had voiced to her supervisory staff that she was seeking career advancement and upward movement within Koch.  In June of 2022, plaintiff expressed to her direct supervisor that she was considering leaving because she disagreed with Koch's recurrent choices on personnel matters, which favored male colleagues over plaintiff.

In October of 2022, Koch offered plaintiff the Project Controls Transformation Leader position at its headquarters in Wichita, Kansas.  This position was a promotion from her first position because it was a fleet-wide position instead of a site-specific position.  Plaintiff requested a $25,000 base-pay increase because she understood that Koch had awarded similar base-pay increases to male employees who had received promotions.  On October 16, 2022, despite the lack of pay increase, plaintiff accepted the offer.

Koch uses an incentive compensation program ("I-Comp") that aligns employees' total annual compensation, including base and variable pay, with their contribution to business results and long-term value.  In January of 2023, in addition to her $125,000 base pay, Koch awarded plaintiff $65,000 in I-Comp for her business contributions during 2022.

Through December of 2022, plaintiff remained at Fort Dodge because Koch needed her for transitional purposes.  During January and February of 2023, plaintiff remotely fulfilled her new

job responsibilities.  In early March of 2023, plaintiff physically relocated to Wichita.

In plaintiff's new position as Project Controls Transformation Leader, Burton Tredway, Director of Projects and Procurement, was her direct supervisor.  In her new role, plaintiff's team/department (her similarly situated colleagues) consisted of Travis Lane (male), Dana Jacobs (male), Kevin Whitson (male), Rick Reisner (male), Ken Dayton (male) and Allison Dellinger (female).  Plaintiff and her similarly situated colleagues all (1) reported directly to Mr. Tredway, (2) had distinct duties and areas of expertise, (3) were expected to work collaboratively with one another, (4) were considered peers in terms of stratification, (5) worked similar hours, (6) worked in the same physical location, (7) were similarly responsible for their respective areas of expertise, (8) held similar educational credentials and (9) operated at similarly advanced skill levels.

As standard practice in the Wichita headquarters, Koch provided offices on the first floor to all project controls leaders, project managers and key operation leaders—which included plaintiff and similarly situated colleagues.  Upon her arrival, however, Koch informed plaintiff that it was providing her a cubicle instead of an office, and that she would have access to office space on the third floor as needed.  Of similarly situated colleagues, Koch provided cubicles instead of offices to only plaintiff and Ms. Dellinger (the only two females).  For the entirety of plaintiff's employment in Wichita, she and Ms. Dellinger worked in cubicles instead of offices.

In January of 2023, plaintiff began noticing concerning behavior from one of her male peers, Mr. Lane. Mr. Lane (1) questioned why plaintiff was involved in several meetings/initiatives, (2) stated that he believed that he "spoke for" plaintiff and (3) questioned plaintiff's expertise in front of other Koch employees.  Mr. Lane did not exhibit these behaviors toward male colleagues.

From the beginning of plaintiff's employment in Wichita, Koch assigned support staff to

Mr. Lane to assist in his projects and initiatives.  In February of 2023, plaintiff began asking Mr. Tredway to also assign support staff to her.  Koch had long afforded such support to Mr. Lane and plaintiff's similarly situated male colleagues.  In an effort to work collaboratively with Mr. Lane, plaintiff requested that two of his supporting analysts assist her with a project that would also support Mr. Lane's initiatives.  Mr. Lane vigorously opposed this request.

In April of 2023, by email to Mr. Tredway, plaintiff formally requested that Koch assign support staff to assist in her initiatives.  Plaintiff expressly emphasized that unlike similarly situated male colleagues, Koch was not assigning her the resources she needed to be successful. Plaintiff further expressed that Mr. Lane and similarly situated male colleagues had been engaging in resource allocation discussions while purposefully excluding plaintiff.  Until the end of her employment with Koch, plaintiff continually requested that Koch assign her resources to support her efforts and initiatives, expressly mentioning that Koch had afforded similarly situated male colleagues the support that she was requesting.  Mr. Tredway continually denied and/or ignored her requests, and Mr. Lane impeded her requests.

Between April of 2023 and the end of plaintiff's employment with Koch, plaintiff observed Mr. Lane intentionally interfere with her work product on several occasions by (1) refusing to share resources with plaintiff while freely sharing resources with similarly situated male colleagues, (2) stealing plaintiff's ideas and working them into his own work product without crediting plaintiff while openly crediting the ideas of similarly situated male colleagues, (3) criticizing plaintiff's input while enthusiastically supporting the input of similarly situated male colleagues and (4) purposefully excluding plaintiff from important meetings/events with similarly situated male colleagues.  On several occasions, particularly leading up to September of 2023, plaintiff informed Mr. Tredway of the differential treatment and behavior she was experiencing

-5-

from Mr. Lane.

In September of 2023 during a one-on-one meeting with Mr. Tredway, plaintiff again raised her concerns about Mr. Lane's behavior and deferential treatment.  Mr. Tredway responded by asking plaintiff, "If I were to base your salary on your ability to get along with Mr. Lane, what would you do differently?"  Amended Complaint (Doc. #12) at 7.  Plaintiff responded by informing Mr. Tredway that if that was the case, plaintiff would no longer work for Koch because she would not continue to work for an employer that based her salary on her ability to tolerate differential treatment on the basis of gender.  Plaintiff asked Mr. Tredway if he had asked Mr. Lane the same question.  During the following week's one-on-one meeting, Mr. Tredway expressed disapproval at plaintiff's comment and stated that plaintiff's answer to his question took him by surprise. Plaintiff asked her similarly situated male colleagues—other than Mr. Lane—whether they had ever experienced a similar situation or line of questioning from Mr. Tredway.  They informed her that they had not.

In October of 2023, after plaintiff had repeatedly emphasized to Mr. Tredway the ongoing issues that Mr. Lane was causing, Mr. Tredway began scheduling weekly meetings with plaintiff and Mr. Lane ("BT/AK/TL Meetings").  During these meetings, Mr. Lane consistently undermined plaintiff's work product, attempted to call into question her expertise and intentionally mischaracterized data issues as plaintiff's failures.

On or about October 17, 2023, to elevate her complaints beyond Mr. Tredway, plaintiff raised her complaints to a long-time senior leader of Koch, Dan Carpenter.  Mr. Carpenter indicated that he was aware of the issues which plaintiff described and that he would connect with Mr. Tredway on the issues.

On October 30, 2023, during a meeting with Mr. Tredway, plaintiff again re-iterated that

Koch was not assigning her the resources and support necessary to succeed in her position and emphasized that similarly situated male colleagues were not dealing with this same issue because Koch was providing them the support which they requested. In response, Mr. Tredway stated that "if we can't figure this out, I am going to have to make some changes," impliedly threatening plaintiff's job. Id. at 8.

Following these interactions, Mr. Tredway's treatment of plaintiff began to worsen. Mr. Tredway became ultra-critical of plaintiff's work product and began demanding that plaintiff's work product constantly be at a working level of detail, while not making the same criticisms and demands of Mr. Lane or plaintiff's similarly situated male colleagues. Mr. Tredway increasingly made these criticisms and demands in front of plaintiff's colleagues, and he provided less and less genuine constructive criticism during their weekly one-on-one meetings.

On November 30, 2023, Mr. Tredway informed plaintiff that Koch was awarding her $35,000 in I-Comp for her 2023 business contributions—$30,000 less than plaintiff's 2022 I-Comp award. Mr. Tredway stated that the decrease was because of Koch's reduced business results in 2023, implying that Koch equally reduced all employees' I-Comp. Following this conversation, plaintiff asked her similarly situated male colleagues—other than Mr. Lane—whether they had received analogous reductions in their 2023 I-Comp. They informed her that compared to 2022, they either (1) had received a less drastic reduction in I-Comp, (2) had received the same or similar I-Comp or (3) had received increased I-Comp.

On January 12, 2024, during a BT/AK/TL Meeting, Mr. Lane became aggressive in tone and posture toward plaintiff because plaintiff had not run by him the work product which she was sharing. Plaintiff expressed, again, that she was not Mr. Lane's subordinate and was not required to run her work product by him for approval. Mr. Tredway permitted Mr. Lane's aggressive

behavior to continue throughout the meeting.  Mr. Lane's aggressive and hostile behavior toward

plaintiff, which was not exhibited toward plaintiff's male colleagues, similarly situated or

otherwise, continued daily through the end of plaintiff's employment with Koch.

On or about February 4, 2024, plaintiff submitted a complaint via Koch GuideLine—an

online platform available to Koch employees to report concerns about ethical behavior, potential

or actual violations of a law or violations of a company policy or standard.  Plaintiff's complaint

outlined the instances of Mr. Tredway's behavior, plaintiff's repeated complaints to supervisory

staff and other high-level members of Koch, the ongoing lack of change or interference by Koch

in response to plaintiff's complaints and plaintiff's fear of further consequences resulting from her

GuideLine complaint.  On or about February 9, 2024, plaintiff met with Chelsea Creech, a member

of Koch's employee relations team, and provided additional information and details related to the

issues outlined in her complaint.

Six days later, on February 15, 2024, plaintiff submitted her resignation.  Among other

things, plaintiff stated that "Despite being a strong employee who has delivered superior results

for [Koch], I have been the subject of ongoing unlawful harassment and discrimination based on

my gender in the [Koch] organization."  Id. at 10.

Prior to March 8, 2024, plaintiff did not hear from anyone at Koch regarding her complaint

on February 4, 2024.  On March 8, 2024, Ms. Creech called plaintiff to inform her that she had not

found any evidence of gender discrimination and that her investigation was complete.

<u>**Analysis**</u>

Under Rule 12(b)(6), defendant asks the Court to dismiss Count I (hostile work

environment), Count III (retaliation) and Count IV (equal pay) of plaintiff's amended complaint.[1]

## I.    Count I: Hostile Work Environment

Plaintiff alleges that in violation of Title VII and the KAAD, defendant subjected her to harassment on the basis of sex which resulted in a hostile work environment.  Defendant asks the Court to dismiss plaintiff's hostile work environment claim, arguing that plaintiff has failed to state a claim.

Before the United States Supreme Court decided Muldrow v. City of St. Louis, Mo., 601 U.S. 346 (2024), the law was well established that to prove a hostile work environment under Title VII, plaintiff must show that (1) defendant discriminated against plaintiff because of her sex and (2) the discrimination was sufficiently severe or pervasive that it altered the terms or conditions of her employment.  Throupe v. Univ. of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021).  In hostile work environment cases, the alteration to a term or condition of employment is the hostile work environment itself.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (term of employment to not work in "discriminatorily hostile or abusive environment"); see also Kramer v. Wasatch Cnty. Sheriff's Off., 743 F.3d 726, 743 (10th Cir. 2014) (hostile work environment based on protected characteristic alters terms and conditions of employment).

In Muldrow, the Supreme Court altered the Title VII landscape by holding that when plaintiffs bring suit under Title VII's discrimination prong, they need not show that harm was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."  Muldrow, 601 U.S. at 355.  Instead, plaintiffs need only show "some

---

[1]    Plaintiff asserts identical claims for hostile work environment and retaliation under both Title VII and the KAAD.  See Amended Complaint (Doc. #12).  Because the same standards and burdens apply to claims under Title VII and the KAAD, the Court's analysis applies to both claims.  See Watson v. City of Topeka, 241 F. Supp. 2d 1223, 1230 (D. Kan. 2002) (hostile work environment); Singh v. Cordle, 936 F.3d 1022, 1042 (10th Cir. 2019) (retaliation).

harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment. Id. at 354–55. It held that Title VII's anti-discrimination provision simply "seeks a workplace where individuals are not discriminated against" because of traits such as sex, and "thus flatly prevent[s] injury to individuals based on status, without distinguishing between significant and less significant harms." Id. at 358 (internal citations omitted).

As of yet, the Tenth Circuit has not analyzed the scope of Muldrow and whether it alters the elements of hostile work environment claims under Title VII.[2] Hostile work environment is a form of discrimination which is actionable under Title VII's anti-discrimination provision, so the Court considers defendant's motion under both pre-Muldrow and Muldrow standards. In other words, the Court first considers whether plaintiff has plausibly alleged that she suffered severe or pervasive harassment which altered the terms or conditions of her employment under pre-Muldrow law. The Court then views plaintiff's claim through the lens of Muldrow and asks whether plaintiff has plausibly alleged that she suffered some harm or some disadvantageous change with respect to an identifiable term or condition of her employment on account of a hostile work environment.

A.    Whether Plaintiff Has Plausibly Alleged Severe Or Pervasive Harassment

A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 117. "An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Iweha v. State of Kan., 121 F.4th 1208, 1221 (10th Cir. 2024). Whether a hostile work environment exists "is not, and by its nature cannot

---

[2]    The Tenth Circuit has held, however, that Muldrow applies to discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc., No. 24-1055, 2025 WL 2026168, at *3 (10th Cir. July 21, 2025).

be, a mathematically precise test." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).  Rather, it

"depends not only on the number of incidents, but also on the severity of the incidents."  Tademy

v. Union Pac. Corp., 614 F.3d 1132, 1143 (10th Cir. 2008).  Whether a work environment is hostile

is disjunctive—pervasiveness and severity are independent and equal grounds on which plaintiff

can support her hostile work environment claim.  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222

(10th Cir. 2015).

Plaintiff must allege that her work environment was both subjectively and objectively

hostile.  Throupe, 988 F.3d at 1252.  To make this determination, the Court looks at the totality of

the circumstances and considers "the frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23.  Isolated

incidents of discriminatory conduct and "run-of-the mill boorish, juvenile, or annoying behavior

that is not uncommon in American workplaces" are insufficient to support a claim for hostile work

environment.  Throupe, 988 F.3d at 1252.

Here, plaintiff has alleged that Koch subjected her to sexual harassment from January

of 2023 through February of 2024 when (1) Mr. Lane questioned plaintiff's involvement in several

meetings and initiatives in front of other Koch employees but did not question the involvement of

similarly situated male colleagues in analogous meetings and initiatives; (2) in front of other Koch

employees, Mr. Lane stated that he believed that he could speak for plaintiff but did not state that

he believed he could speak for similarly situated male colleagues; (3) Mr. Lane refused to allocate

members of his support staff to assist plaintiff's initiatives but did not refuse to allocate resources

to similarly situated male colleagues and actively supported the efforts of similarly situated male

colleagues to obtain additional staff; (4) Mr. Lane stole plaintiff's ideas and suggestions without

crediting plaintiff but openly credited the ideas and suggestions of similarly situated male colleagues; (5) Mr. Lane criticized plaintiff in front of other Koch employees but enthusiastically supported and encouraged the input of similarly situated male colleagues; (6) Mr. Lane purposefully excluded plaintiff from important meetings and events with similarly situated male colleagues; (7) Mr. Lane made efforts to mischaracterize data issues as plaintiff's failures in front of other Koch employees but acknowledged data issues and bottlenecks when discussing the work of similarly situated male colleagues; (8) Mr. Lane became aggressive in tone and posture toward plaintiff during meetings and improperly expressed frustration toward plaintiff because she had not previously run her work product through him; (9) Mr. Tredway implied that plaintiff's salary would be impacted if she did not get along with Mr. Lane, but did not make any similar threats to Mr. Lane or similarly situated male colleagues; (10) Mr. Tredway implied that he would terminate plaintiff's employment when she confronted him about not being assigned the resources and support she had been requesting despite similarly situated male colleagues receiving the resources and support which they requested; (11) Mr. Tredway was ultra-critical of plaintiff's work and demanded that her work product constantly be at a working level of detail, while not making the same criticisms and demands of similarly situated male colleagues; (12) Mr. Tredway increasingly criticized and made demands of plaintiff in front of other Koch employees; and (13) Mr. Tredway awarded plaintiff $30,000 less in I-Comp for 2023, while awarding similarly situated male colleagues less drastic reductions, similar amounts or even increased I-Comp compared to 2022.

Plaintiff has alleged at least 13 distinct instances of differential treatment based on sex over a 13-month period. Plaintiff has further alleged that Mr. Lane's aggressive and hostile behavior occurred daily. Plaintiff has alleged that Mr. Lane and Mr. Tredway's behavior was physically threatening, humiliating and interfered with her ability to perform her work—it exceeded run-of-

the-mill boorish, juvenile or annoying behavior. Thus, plaintiff has plausibly alleged that defendant subjected her to conduct that was both subjectively and objectively hostile or abusive, and she has plausibly stated a claim for hostile work environment under the pre-Muldrow standard.

B.    Whether Plaintiff Has Plausibly Alleged Some Harm Or Disadvantageous Change To A Term Or Condition Of Employment

Plaintiff has alleged some harm or disadvantageous change to a term or condition of her employment, including (1) lack of support staff and resources which interfered with her ability to do her job, (2) unfair criticism, (3) exclusion from meetings, (4) aggression during meetings, (5) increased or unfair demands and (6) decreased I-Comp compensation. Thus, plaintiff has plausibly stated a claim for hostile work environment under Muldrow.

Accordingly, the Court overrules defendant's motion to dismiss plaintiff's hostile work environment claim.

## II.    Count III: Retaliation

Plaintiff alleges that in violation of Title VII and the KAAD, defendant retaliated against her for engaging in protected activity. Defendant asks the Court to dismiss plaintiff's retaliation claim, arguing that plaintiff has failed to state a claim.

To state a prima facie case of retaliation, plaintiff must allege that (1) she engaged in protected opposition to discrimination; (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between her protected activity and the adverse action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018).

A.    Whether Plaintiff Has Plausibly Alleged Protected Activity

Defendant argues that plaintiff has not plausibly alleged that she engaged in protected

activity. Specifically, defendant argues that plaintiff merely alleges general unfair treatment, not discrimination, and that nothing in plaintiff's amended complaint alleges that she gave notice to Mr. Tredway or Koch that she believed she that she was being discriminated against based on sex.

Plaintiff's opposition to discrimination is protected activity. Iweha, 121 F.4th at 1233. Protected activity "includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII." Boese v. Fort Hays State Univ., 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011), aff'd, 462 F. App'x 797 (10th Cir. 2012). Plaintiff need not show that she reported an actual Title VII violation, as long as she can show a "reasonable good-faith belief that she was opposing discrimination." Fassbender, 890 F.3d at 890.

Here, plaintiff alleges that (1) by email to Mr. Tredway, she formally requested that Koch assign her support staff, emphasizing that Koch assigned support staff to similarly situated male colleagues, (2) she told Mr. Tredway that Mr. Lane and other male colleagues were engaging in resource allocation discussions and excluding plaintiff, (3) she continually requested that Koch assign her resources to support her efforts and expressly mentioned that Koch awarded similarly situated male colleagues such support, (4) she informed Mr. Tredway on multiple occasions of the differential treatment and behavior she was experiencing from Mr. Lane, (5) she raised her complaints to Koch senior leader Dan Carpenter, (6) she submitted a GuideLine complaint and (7) she told Mr. Tredway that she would not continue to work for an employer that based her salary on her ability to tolerate differential treatment on the basis of gender.

Thus, plaintiff has alleged that on multiple occasions, she complained to Mr. Tredway and Koch leadership about differential treatment which she was experiencing on the basis of sex— conduct which Title VII makes unlawful. Plaintiff has plausibly alleged that she engaged in protected activity.

B.      Whether Plaintiff Has Plausibly Alleged Adverse Action

Defendant argues that plaintiff has not plausibly alleged that she suffered adverse employment action following her protected activity.

In Muldrow, the Supreme Court distinguished adverse employment action in the context of Title VII discrimination claims and adverse employment action in the context of Title VII retaliation claims.  Muldrow, 601 U.S. 346 (2024).  Though Muldrow purported to lower the bar for adverse employment action in discrimination cases, it reaffirmed that in retaliation cases, plaintiffs must still show that the retaliatory action caused a "significant" harm, i.e. the employer took action serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination.  Id.; White, 548 U.S. at 68.  The Supreme Court drew this distinction based on the purpose behind the two statutory provisions.  Muldrow, 601 U.S. at 357.  The purpose behind Title VII's anti-retaliation provision was to capture employer actions "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination," and if an action caused less serious harm, it would not deter Title VII enforcement and thus fell outside the purposes of the ban on retaliation.  Id.  Accordingly, to survive a motion to dismiss, plaintiff must plausibly allege that she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination.  White, 548 U.S. at 68.

Here, plaintiff alleges that (1) Mr. Tredway implied that he would impact her salary if she did not get along with Mr. Lane, (2) Mr. Tredway implied that he would terminate plaintiff's employment when she confronted him about Koch not assigning her the resources and support she had been requesting, (3) Mr. Tredway was ultra-critical of plaintiff's work product and demanded that plaintiff's work produce constantly be at a working level of detail, (4) Mr. Tredway increasingly made criticisms and demands in front of other Koch employees, while giving plaintiff

less constructive criticism at their weekly one-on-one meetings, (5) Mr. Tredway awarded plaintiff $30,000 less I-Comp in 2023 than the previous year, (6) Mr. Tredway refused to intervene or otherwise hold Mr. Lane accountable when he became aggressive and hostile toward plaintiff and (7) Mr. Tredway and Mr. Lane created an intolerable daily work environment which resulted in plaintiff's constructive discharge.

Threats of termination, unfair criticism, public criticism, decreased compensation, daily hostility and aggression would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff has plausibly alleged that she suffered adverse action.

C.    Whether Plaintiff Has Plausibly Alleged Causal Connection

Defendant argues that plaintiff has not plausibly alleged a causal connection between protected activity and adverse action.

Plaintiff may show a causal connection by alleging "circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982). Generally, "if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013).

Here, plaintiff has alleged that during a one-on-one meeting in September of 2023, directly in response to plaintiff's complaints about Mr. Lane, Mr. Tredway implied that he would impact her salary if she did not get along with Mr. Lane. Plaintiff further alleged that on October 17, 2023, plaintiff complained to Mr. Carpenter and (1) immediately following, Mr. Tredway became ultra-critical of plaintiffs work product, (2) on October 30, 2023, less than two weeks later, Mr. Tredway impliedly threatened plaintiff's job and (3) on November 30, 2023, approximately one

month later, Koch reduced plaintiff's I-Comp by $30,000.  Defendant does not argue that Mr. Tredway did not know about plaintiff's complaint to Mr. Carpenter.  In fact, Mr. Carpenter told plaintiff that he would connect with Mr. Tredway about the issues plaintiff raised, so the Court infers that Mr. Tredway knew about her complaint to Mr. Carpenter.  Plaintiff has alleged circumstances which justify an inference of retaliatory motive by alleging multiple instances of protected conduct closely followed by adverse action.

Accordingly, the Court overrules defendant's motion to dismiss plaintiff's retaliation claim.

### III.    Count IV: Equal Pay Act

Plaintiff alleges that in violation of the EPA, defendant failed to provide equal pay. Defendant asks the Court to dismiss plaintiff's EPA claim, arguing that plaintiff has failed to state a claim.

To state a prima facie case of pay discrimination under the EPA, plaintiff must allege that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances."  Riser v. QEP Energy, 776 F.3d 1191, 1196 (10th Cir. 2015) (quoting Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997)).

The Court should not construe the "equal work" requirement broadly, and "comparable work" or "like jobs" do not satisfy the standard.  Lewis v. D.R. Horton, Inc., 375 F. App'x 818, 823 (10th Cir. 2010).  The jobs "need not be identical," however, and must only be "substantially equal."  Id. (quoting Ammons v. Zia Co., 448 F.2d 117, 120 (10th Cir. 1971)). Work is "substantially equal" if it requires "equal skill, effort, and responsibility."  Riser, 776 F.3d at 1196.

It is not possible to precisely define what constitutes equal skill, equal effort or equal responsibility, so the Court must consider "the broad remedial purpose of the law." Id.  Thus, "insubstantial or minor differences" will not "render the equal pay standard inapplicable." Id.

Here, plaintiff has alleged that she and similarly situated male colleagues (1) all reported directly to the same supervisor, (2) were considered peers in terms of stratification, (3) worked similar hours, (4) worked in the same physical location, (5) were similarly responsible for their areas of expertise, (6) held similar credentials and (7) operated at similarly advanced skill levels. Plaintiff has also alleged that similarly situated male colleagues received either an increase, no change or a less-drastic reduction in I-Comp for 2023.

Plaintiff has alleged that her work required equal skill, responsibility, hours and credentials. The fact that she and similarly situated male colleagues had distinct duties and areas of expertise does prevent a finding that their work was substantially equal.  Plaintiff has also alleged that she performed her work under the same conditions as her male colleagues and that Koch paid her male colleagues more I-Comp for 2023.  Thus, plaintiff has plausibly alleged a prima facie case under the EPA.  Accordingly, the Court overrules defendant's motion to dismiss plaintiff's EPA claim.

**IT IS THEREFORE ORDERED** that Koch AG & Energy Solutions, LLC's Motion To Dismiss Plaintiff's Amended Complaint (Doc. #14) filed May 15, 2025 is **OVERRULED.**

Dated this 28th day of July, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge